We will turn to the calendar. The first case on our calendar is Magid v. Rotenberg v. Waldman. Counsel? Good morning, your honors. May it please the court. My name is Scott Horn, counsel representing the appellant, cross appellee Ari Waldman. The appellant contends, your honors, that the district court erred in denying his motion to vacate the arbitration award, despite acknowledging that the integrity of the process may have been compromised. He knew about it, didn't he? He knew about whatever compromise existed, didn't he? He knew after, at the end of the process, your honor, on September 2nd, an email was sent to the arbitrator. And this email, and a follow-up email, ultimately is the basis for the district court's determination that- the position that it was late-breaking news to Mr. Waldman that Mr. Stern was not his dedicated counsel. If you could speak about the impact or the import of that particular email, I'd greatly appreciate it. Sure, your honor. So, the first thing that needs to be said in connection with that, and in connection with my client's role in this proceeding, is that he's a layperson, he's not an attorney. He had been led to believe, and indeed charged over $40,000, under the view that the arbitrator's clerk, Mr. Stern, was his attorney. This was his understanding throughout the matter. He's not an attorney or someone who's well-versed in arbitration procedure. And it was only towards the end that he began to believe that he was being essentially double-crossed, your honor, and that he was being played by the arbitrator's clerk. And even when he raised the objection, the arbitrator's clerk said, I am looking out for your interest, I am representing you. And the arbitrator himself said that the clerk was looking out for Mr. Waldman's interests. But when he sent that email on September 2nd, that should have triggered a duty to investigate on the part of the arbitrator. There were very serious allegations that were leveled here, not just of bias or partiality, but outright misconduct, outright corruption of the process. How is any corruption or bias or improper conduct of Mr. Stern attributable to the arbitrator? Well, the clerk is part of the arbitrable forum. He's the extension of the arbitrator. And if that's the case, then how is it reasonable for you to take the position that he believed that Stern was acting on his behalf? He was either an arm of the arbitrator or he was Mr. Waldman's attorney. It seems to me that an alternate view and one that the arbitrator may have found persuasive was that he was taking a gamble, that this kind of relationship was going to inure to his benefit and then realized it might not. Well, I think that the first point, Your Honor, on that is that Mr. Stern had invoiced Mr. Waldman for legal services, and that appears at page record page 115. Mr. Stern was paid $42,000 by my client, and he operated under the understanding, which was an understanding that was made right from the beginning, that he was not the arbitrator's clerk and that he was in the room as Mr. Waldman's advocate. And so when you look at the evidence involving proof of charges for legal services and extensive billing for meeting with the opposition and extensive billing for traveling to the arbitration site in Brooklyn, all of this confluence of events combines to come to the very reasonable understanding that this was his counsel. This was his advocate. That's how he was brought into the case. Mr. Stern actually navigated Mr. Waldman into this forum and said, I will represent you. That's the theory. And underlying that facial presentation by Mr. Stern, we see that underlying that there was a connection, a familial connection to the other side, which the district court specifically found may have, quote, crossed the line. No, the district court specifically found that it did not cross the line. Well, the district court never reached a conclusion on the issue of partiality or misconduct. The district court said, I don't need to reach that issue. But he didn't think this relationship, such as it is, was too close for comfort. Yes. He made the observation that this relationship may have, quote, crossed the line. And that's at page 180 of the record. And I think that's an important observation, as well as the court's observation that Mr. Waldman, quote, may have a legitimate grievance, unquote, against the arbitrator's clerk. And when you look at it in this terms, having a grievance against the arbitrator's clerk, by definition, would seem to trigger a duty on the part of the arbitrator to investigate once he finds that his clerk is taking 40 plus thousand dollars from one of the parties to the arbitration. And I think that's kind of where the rubber hits the road on this issue. May I ask, if there is a duty to investigate, to what end, right? I mean, certainly the arbitrator believed that he was getting the counsel that he needed as a clerk and that he was the one making the distinction. Like, the part that I think I would appreciate hearing more on is how there was any, what are we supposed to do about a duty to investigate if the arbitrator believes that they were not improperly influenced? And who gets to decide whether or not the arbitrator is wrong in that? Well, ultimately, the arbitrator did nothing. So this court has set forth a standard in the applied industry materials case, which we've cited in our brief, regarding the duty to investigate. And what it found was that the failure to investigate or the failure to explain why you did not investigate itself may meet the standard of evident partiality. After Mr. Walden knew of this alleged bias, he sent his summation of his argument to the arbitrator, in effect, conceding that this was a legitimate arbitration. Can you deal with that? Sure, Your Honor. Sure, Your Honor. So at the time that that email is sent, it's important to understand that this is a layperson who found himself at the 11th hour no longer having representation. When he sent that email, he specifically advised the arbitrator of these problems, triggering a duty to investigate, and essentially followed it up by saying, well, you heard my objections. I registered them vociferously. What are you going to do about it? And the arbitrator did nothing about it except to render an award. So I think all of the cases... Isn't that when he also sent the summation of his argument at the same time? That's correct, Your Honor. Yes, that's correct, Your Honor. So he was into the process and he was prepared to abide by the process. If I may respond to that, I see that my time is up. Please respond. Thank you, Your Honor. So as a layperson, it's not incumbent upon him to know one way or another what he's supposed to do in this context. He's floundering about. He just found out that his counsel was essentially double-crossing him. And it's for this reason, Your Honor, that all of the cases that were cited in the district court's decision and the one case that was cited in the appellee's brief are all distinguishable. None of the cases involving waiver involve a pro se layperson litigant. And I think that that is of critical import here in addition to the fact that once those objections are raised, it's now incumbent upon the arbitrator told that his clerk was corrupting the process to do something, either investigate or not investigate and explain why he did not investigate. All right. Thank you. You have reserved two minutes for rebuttal, so you'll get another chance. Thank you. Let us hear from the attorney for Magid and Rosenberg. Good morning, Your Honors. Shortening Stone for the appellees and cross appellants, Mr. Magid and Mr. Rotenberg. So I want to address briefly a couple of things that were addressed by the appellant's counsel. One, the description of the district judge's decision regarding the family relationship is not correct. What the district court said is it's not clear that the relationship crossed the line. And I think counsel is mischaracterizing the district court. That's what I thought, actually. That is correct, Your Honor. Counsel is relying heavily on this idea that his client was pro se. And it is, of course, not uncommon for parties and arbitration proceedings to proceed pro se. My clients proceeded pro se in the arbitration proceeding. And counsel provides no law, did not brief any law to suggest that the extensive case law that this court has built up concerning Section 10A2 in FAA arbitrations is somehow different when a party is unrepresented by counsel. If that's the law, there's no evidence that any such law exists. And I think the court has indicated correctly that this case can be decided based on waiver. The district court didn't decide whether the arbitrator was biased in the end or not. He held correctly that Waldman waived the issue by not raising it in the arbitration. Can I ask why Stern's actions cannot be imputed to Lieberman? Well, it's certainly true that if we were in your court, Your Honor, or in the district court, and we were applying Article 3, this would not be an ideal situation, right? The facts, at least as alleged by Waldman, are not ideal. Waldman argues that he had this dual role. But there is no clear and convincing evidence that Stern was Waldman's legal advisor. And so from Lieberman's perspective, remember, Lieberman set on… Wasn't he Lieberman's law clerk? Excuse me. Yes, he was. In fact, Lieberman thought that was his only role. Lieberman testified under oath in his declaration that none of the parties had counsel. He believed that Stern was his clerk. And the information that Waldman put in front of the arbitrator in his September email didn't ask Lieberman to do anything about it. He simply said, I don't want to deal with Stern anymore. And that was his prerogative. He says, as he indicated in the email, I'm going to proceed pro se. I have some help from a friend who's going to help me with my finish up the case. And I don't want to deal with Stern anymore. He didn't ask Stern. He didn't ask Lieberman to step down. He didn't ask Lieberman not to issue a decision. To the contrary, he followed it up two weeks later and said, what's going on with this case? He asked the court, as the district court correctly found, he asked the arbitrator to issue his decision. And there was nothing more that Lieberman could do when the only thing that Waldman had asked him to do was to get Stern away from him. The issue here is not Stern's actions in the arbitration. The issue is whether the arbitrator was biased against Waldman. And Waldman's evidence concerning Stern falls short of that mark. Can you talk a little bit about choice of law? Both sides have dueling views on choice of law, but both sides say they'd win under either scenario. If you could talk about what you think is the best case supporting your view and what you think the material differences are, how this outcome is impacted. Sure, Your Honor. So, first, a choice of law provision is going to be enforced only if it clearly and unambiguously manifests an intent to be bound by the law of a particular jurisdiction. That's the law that would apply to a contract, for example, under New York law. There is no such provision. There is no provision that clearly and unambiguously manifests an intent to be bound by New York law. The provision that the appellant is pointing to is a provision that addresses personal jurisdiction and service of process. The mechanism by which the parties would come to court to confirm or vacate the award. But even if there were a clear and unambiguous choice of law provision, the FAA, not New York law, applies when there is federal subject matter jurisdiction, like diversity jurisdiction exists here. No dispute about that. And two, when the contract calling for arbitration involves interstate commerce. Again, there's no dispute about here. That's the standard set out by this court in the Barbier case. When you have a moment, could you talk about your cross appeal? I would, Judge. So the issue here, of course, concerns attorney's fees. And the arbitrator issued an award that included attorney's fees. We're talking about attorney's fees in the district court. Correct. The attorney's fees incurred in confirming or enforcing the award. And the district court held that the arbitrator lacked the authority to issue such an award as a matter of law. That's wrong as a matter of law and subject to de novo review. And he's wrong. The district court was wrong for three reasons. First of all, the arbitrators have the authority to award attorney's fees if the fees were requested by all parties. And the district court made a finding that both sides asked the arbitrator to award attorney's fees. Waldman argues, and the district court held, that a request in an arbitration for attorney's fees does not give the arbitrator the power to award attorney's fees incurred in the district court. But the burden to demonstrate that the arbitrator exceeded his powers falls on Waldman. And Waldman did not cite any law. And the district court did not cite any law for the proposition that fees in the district court are unavailable. Imagine, if you will, that the arbitrator awarded attorney's fees that were incurred both in the arbitration and in the district court. That award would be upheld. Now, in this case, the arbitrator awarded fees only in the district court. Why? Wait, wait, you said it would be upheld. Why do you say it would be upheld? What's your basis for saying that? I meant solely with respect to this distinction between. You said if he had granted fees for both, it would have been upheld. And I'm just wondering what the basis for that was. Because I believe that the law for when the fees would be applicable should be the same as they would in any proceeding. If fees are available at the trial level, this court and every court I know of has held, if you're entitled to fees at the trial level, you're entitled to fees on review. Because it's considered one piece of litigation. Except it wasn't a trial. It was an arbitration. Proceeding. Correct. Correct. But I believe if fees, if fees were otherwise appropriate to be awarded at the arbitration for fees incurred in the arbitration. Right. Then why wouldn't fees be available? Viscerally, the response is, well, of course, if you're going from the arbitration to the courts, then you go to the court. You ask for fees from the court for that part of the proceedings, that it should have been the court that if you want fees for what happened in court, you get it from the court, not from the arbitrator before there are any such proceedings. And I'm sorry, Mr. Stein, you said that there were three reasons. If you could get through the other two pretty quickly, I'd appreciate that. I can judge, I can talk quickly. The other issue is inherent authority. So this court has held that arbitrators have great flexibility, greater than courts in fashioning remedies. The question here is, does that include attorney's fees? I believe it does. For example, in Benihana, the court said arbitrators have the power to fashion remedies that they believe will do justice between the parties. I believe that's broad enough to encompass attorney's fees. Now, the issue has not come before this court, but it has come before the Southern District, among other courts. And the Southern District held in general security that arbitrators have the inherent authority to award attorney's fees so long as the arbitration agreement broadly defines the types of disputes to be subpoenaed to arbitration and doesn't limit the types of relief that the panel's entitled to award. And there's no dispute that both of those requirements are satisfied here. So I believe the district court erred in disregard of the inherent authority to award attorney's fees. The arbitrator specifically did not make a finding of bad faith, which ordinarily would lead to fees. Bad faith could lead to fees, but I do not believe it's the sole basis for the availability of fees, which is, I think, what the district court believed. The district court in general security held that the arbitrator has the inherent authority to award attorney's fees without a finding of bad faith. But I want to move to my last point, which is that none of this matters. This court has held in jock that a district court may, under 10A4, a district court may vacate an award where the arbitrator exceeded their powers. And this court held in jock that the issue is not whether an arbitrator had the power to reach, the issue is whether the, excuse me, the issue is whether the arbitrator had the power to reach the issue, not whether the arbitrator correctly decided the issue. Quote, put simply, section 10A4 does not permit vacateur for legal errors. This is exactly what happened in jock. This is a situation where the parties granted the arbitrator the power, the authority to determine an issue, but the arbitrator allegedly made an error of law. Where an arbitrator made an error of law, but the district court was authorized to reach that issue, the district court lacks the authority to vacate the award. The district court erred in vacating the award because the issue of attorney's fees was properly presented to the arbitrator. And the arbitrator's decision, whether it's right or wrong, does not authorize the district court to vacate the award under section 10A4. Thank you. With the presider's permission, may I ask one final question? Sure. So on one instance, you are using the award of attorney's fees or the fact that Waldman, Mr. Waldman requested attorney's fees to help with the fee award. But I'm wondering if that also suggests that maybe he or that adds credence to his thought that he actually had an attorney, because we knew that Lieberman wasn't charging him anything. So if he was seeking attorney's fees, it must have been to pay Stern, right? So how does that how does that fact fit into the other underlying argument about whether or not Stern was improperly playing those sides? Well, I can't speak to what was in Mr. Waldman's mind when he asked the arbitrator to award attorney's fees, but I can provide this insight. My clients asked the arbitrator to award attorney's fees and they didn't have any counsel at that level. So by definition, they were asking the arbitrator to award attorney's fees for enforcement proceedings. And that's consistent with the phraseology used in the award. Remember, the arbitrator issued an award that allows fees incurred in confirming or enforcing the award. That's not fees meant in the arbitration. It's enforcement comes later. And I assume I can only assume that Waldman meant the same thing that my clients meant, which is fees that come after today because from their perspective. Fees in the district court. Fees in the district court is what the enforcement is. Yes. Yes, Your Honor. Thank you, counsel. We will hear a rebuttal from Mr. Horn. You have two minutes, counsel. Thank you, Your Honor. I'd like to take use my two minutes just to highlight a couple of items that Appellee's counsel noted. And then one important item that Appellee's counsel did not state. And with regard to that, and what I think is truly an important issue here because it was the basis for the district court's determination. I had stated in my presentation that there was no precedent that was invoked by the district court or by the appellee that stood for the waiver concept applicable to a lay person who's appearing pro se in the arbitration process. The appellee's counsel in his presentation didn't offer up any such case. And indeed, that sort of analysis is really undercut when you factor into the entire context in which this arose, in which, again, he believed that he was represented by counsel right up until the 11th hour. And I think that's critical on the waiver issue. The second point that I would like to make is with regard to the attorney's fees. Appellee's counsel made the representation that the district court specifically found both sides had asked for attorney's fees. That is incorrect. So if your honors would look at page 184 of the record, the language that presumably counsel's referring to was a portion of the decision where the court was referring to what the petitioner's argument was, what the appellee's argument was. But if you look in the paragraph after that, and if you look more importantly in the footnote, you'll see that what the court actually said was that to the extent the appellees rely upon Mr. Waldman's summation statement, they failed to submit it to the district court. And therefore, the district court found that to be curious, and therefore, the appellees did not meet their burden to establish that there was an understanding that attorney's fees for a future post-arbitration judicial proceeding was by agreement of the parties. If there are no further questions from the panel, your honors, we respectfully request that the district court's order denying vacatur should be reversed. Thank you. Thank you. Thank you. Both will reserve decision.